WASHINGTON YALE *vs.* JOHN WATSON.

Argued June 27, 1893.   Reversed July 14, 1893.

**"Taken Care of a Note"—Meaning of in Business Circles.**
"To take·care of" matured paper construed as meaning to take it up
by payment or renewal, or to secure an extension of the time of payment.

Appeal by defendant, John Watson, from an order of the District
Court of Hennepin County, *Seagrave Smith*, J., made March 1, 1893,
denying his motion for a new trial.

On October 20, 1885, James Hill made his promissory note where-
by he promised to pay to the order of Washington Yale, plaintiff,
seven thousand dollars, one year thereafter with interest.   Before
delivery John Watson, (defendant,) by writing on its back, guar-
antied payment of this note.   Plaintiff loaned to Hill the money
and took this note, knowing that defendant was merely a surety on
it for Hill's accommodation.   Hill paid the interest for two years.
In 1892 Yale brought this action against Watson on the guaranty.
Watson answered that on or about October 20, 1886, he met Hill on
the street, and Hill said he was on his way to see Yale for the pur-
pose of fixing up and taking care of this note.   Watson soon after
saw Yale and told him what Hill had said on the street, and asked
him if Hill had called upon him and "taken care of the note."   Yale
answered that Hill had called and taken care of the note.   Watson
never thereafter saw Hill or Yale to have any conversation with
either, and supposed for years thereafter that the note was paid.
Hill was then solvent, and so continued up to September 1, 1889.
Since then Hill has been and is insolvent.   That Yale by this con-
duct is estopped, and defendant discharged from liability.   Plaintiff
replied, denying the conversation and all the matters relied upon as
an estoppel.   The issues came on for trial February 15, 1893.   Plain-
tiff moved for judgment on the pleadings and the court granted the
motion.   Defendant excepted to the ruling; made a bill of excep-
tions, which was settled, signed and filed.   On it and the pleadings
and record he moved for a new trial and was denied.   He appeals.

*Larrabee & Gammons*, for appellant.

The acts alleged in the answer, if true, (and for the purpose of this
argument they must be taken as true,) are sufficient to estop the

plaintiff from now alleging that the note was not taken care of, the principal debtor, the maker of the note, having in the meantime failed and become insolvent. The payee did not say the note was paid; he did say that the maker of the note had called upon him and taken care of the note. What is the meaning of this expression? How can a note be taken care of by the maker? He can pay it and take care of it completely, or he can take care of it temporarily by getting an extension of the time of payment. In either event the guarantor is discharged.

The defendant was justified in construing this remark as he did, and in assuming that the note was paid; or, at least, in believing that some arrangement had been made by which he, the guarantor, was released. People in business become accustomed to the use of certain words and phrases. To take care of a past-due note is to pay it or renew it. To say that a note has been taken care of is the same as to say that it has been paid or renewed.

Defendant is also discharged by the laches of plaintiff. It is a just and reasonable rule that the guarantied creditor should use, in collecting the debt from the original debtor, the same care and diligence which prudent creditors commonly use in collecting their debts. While this is the rule laid down in the text-books, and by many courts, we are aware that our own court has held guarantors to a very strict liability. *Hungerford* v. *O'Brien*, 37 Minn. 306.

*Jackson & Atwater*, for respondent.

Defendant is in fact a joint maker of the note with Hill. *Stein* v. *Passmore*, 25 Minn. 256; *Maine Trust & Banking Co.* v. *Butler*, 45 Minn. 506.

The facts set out in the answer do not make out an estoppel *in pais*, even though defendant's legal obligation was that of a surety. The answer sets out the evidence instead of the ultimate facts. They alone must be pleaded, and not evidential facts, and the plea of estoppel is an affirmative defense which defendant must show to be good upon his answer. This he has not done. He has not alleged either that plaintiff represented that the note had been paid, or that he represented that an extension of time of payment had been given. It is not a necessary interpretation of the statement that a note is taken care of, that the note has been paid, or that an extension of the time of payment has been given.

The statement that a note has been taken care of, does not naturally mean that the note has been paid. It is not the expression which would ordinarily be used to state that fact. The person to whom it was addressed would understand that the note had not been paid. It means in fact that nothing more than that some arrangement had been made by the holder of the note by which he expects that it will be paid at some time in the future. Whether such arrangement provides for an extension of the time of the payment of the note or not is left entirely uncertain. In the statement itself there is no affirmation either way concerning that fact. The fact of an extension of the time for payment of the note is one which is entirely independent of the fact affirmed in the statement, and it is entirely immaterial whether defendant believed this second fact to exist or not.

MITCHELL, J. This action was upon a promissory note executed to plaintiff by one Hill, the allegation of the complaint being that before the delivery of the note, and for the purpose of giving credit to the same, defendant indorsed as follows: "I hereby waive demand, protest, and notice of nonpayment, and for value received guaranty payment of the within note." The answer admits the execution of the note and. of the guaranty indorsed thereon, but denies knowledge or information sufficient to form a belief as to how much has been paid on it. The answer then alleges that either about the date of the maturity of the note or a year afterwards Hill-notified defendant that he was on his way to see the plaintiff "for the purpose of fixing up and taking care of said note;" that soon afterwards defendant saw plaintiff, and, after stating to him what Hill had said, asked him if the latter "had taken care" of the note, to which plaintiff replied that "Hill had called upon him, and taken care of said note;" that from that time (October, 1886 or 1887) until the commencement of this action (in 1892) the defendant never saw Hill or plaintiff, or either of them, or had any notice or information from either of them, or from any other source, that the note had not been "fully cared for and paid;" but, on the contrary, relying upon the statement of plaintiff, as before alleged, he supposed and believed that the note had been paid and canceled; that from the time of the execution of the note until Sep-

tember, 1889, Hill was perfectly solvent, and during all that time the full amount could have been collected by the exercise of ordinary diligence, but that since the date last named Hill has been, and still is, insolvent, and no part of the note collectible from him; that plaintiff has never used any diligence whatever to collect the note from Hill, although he knew that defendant was not the principal debtor, but only guarantor for Hill; that by reason of this lack of diligence on the part of plaintiff, and by reason of plaintiff's informing him that Hill had taken care of the note, defendant was deceived, and led to believe that the note had been paid, and by reason thereof did not proceed to collect the note or secure himself against his liability of guarantor, but, upon the contrary, believing the note had been paid, did nothing towards collecting it while Hill was solvent; that, if compelled to pay the note, he would now be unable to indemnify himself by recourse against Hill.

The trial court ordered judgment for plaintiff on the pleadings. The correctness of the ruling, of course, depends on the question whether the answer states facts sufficient to constitute a defense. Counsel have spent some time discussing the question whether the defendant was a guarantor or joint maker. While we have no doubt he was the former it makes no practical difference which he was. In either case it sufficiently appears from the answer that, as between defendant and Hill, the latter was the principal debtor, and the former a mere surety, and that plaintiff knew that fact. Something is also said as to the negligence of plaintiff in delaying to attempt collection from Hill. This, of itself, would constitute no defense. Mere passive delay to collect the note from the principal debtor would not release the surety. *Benedict* v. *Olson*, 37 Minn. 431, (35 N. W. Rep. 10.) The case, therefore, comes down to the question whether the facts set out in the answer are sufficient to constitute an estoppel *in pais;* and this mainly depends upon the effect to be given to the allegation that plaintiff informed defendant that Hill had "taken care" of the note. Had the allegation been that plaintiff informed defendant that Hill had paid the note, there could hardly have been any doubt that this, with the other allegations as to subsequent acts and events, would have constituted a good defense. But it is contended by plaintiff that the statement that the note had been "taken care of" was an am-

biguous expression, that did not necessarily mean either that the note had been paid, or that an extension of time of payment had been given; that defendant had no right to rely on such a statement as meaning that either of these things had been done, but should have gone further, and ascertained from plaintiff whether either of these two facts existed; and, further, that it was at most a mere evidential fact, and not an ultimate one, which alone should be pleaded. In some respects the answer is somewhat peculiar, but we cannot agree with plaintiff's counsel as to the meaning and construction to be given to the expression "taking care of the note." We think that in the language of street and office, and as understood among business men, to "take care of" matured paper means to take it up either by paying or renewing it, or at least to secure an extension of the time of payment, and that defendant was justified in so understanding it, and, if he did, and acted on the faith of it to his damage, the plaintiff is now estopped to allege a different state of facts. For this reason we think the court erred in ordering judgment on the pleadings.

Order reversed.

(Opinion published 55 N. W. Rep. 957.)